UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

RYAN A.,[1]  
    Plaintiff,

vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:24-cv-475
Litkovitz, M.J.

**ORDER**

Plaintiff Ryan A. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying his application for disability insurance benefits (DIB). This matter is before the Court on plaintiff's statement of errors (Doc. 8), the Commissioner's response in opposition (Doc. 10), and plaintiff's reply memorandum (Doc. 11).

**I. Procedural Background**

Plaintiff protectively filed an application for DIB on December 21, 2021 alleging an onset date of disability of June 15, 2020, due to degenerative disc disease, post-traumatic stress disorder (PTSD), anxiety, depression, bulging discs in the lumbar spine, and herniated discs in the lumbar spine. (*See* Tr. 15, 26, 382). The application was denied initially and on reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* telephone hearing before administrative law judge (ALJ) Jerry Meade. Plaintiff and a vocational expert (VE) appeared telephonically and testified at the hearing on November 9, 2022. (Tr. 64-84). On November 30, 2022, the ALJ issued a decision, concluding that plaintiff was not disabled. (Tr. 103-22). On

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

March 24, 2023, however, the Appeals Council granted plaintiff's request for review and remanded the matter for further proceedings. (Tr. 123-29).

On remand, the claim was assigned to the same ALJ. After telephone hearings held on August 17, 2023 (Tr. 50-63) and March 11, 2024 (Tr. 32-49), the ALJ issued a decision again denying plaintiff's application on April 16, 2024. (Tr. 12-31). This decision became the final decision of the Commissioner when the Appeals Council denied review on July 5, 2024. (Tr. 1-6).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

> 5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. [Plaintiff] last met the insured status requirements of the Social Security Act on December 31, 2022.
>
> 2. [Plaintiff] did not engage in substantial gainful activity during the period from his alleged onset date of June 15, 2020 through his date last insured of December 31, 2022 (20 CFR 404.1571 *et seq*).
>
> 3. Through the date last insured, [plaintiff] had the following severe impairments: degenerative disc disease and obesity (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, [plaintiff] did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that, through the date last insured, [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can never climb ladders, ropes, or scaffolds; frequently climb ramps and stairs; occasionally stoop, kneel, crouch,

and crawl; must avoid concentrated exposure to extreme cold and vibrations; and must avoid all exposure to hazards such as moving machinery and unprotected heights.

6. Through the date last insured, [plaintiff] was capable of performing past relevant work as a news writer. This work did not require the performance of work-related activities precluded by [plaintiff]'s residual functional capacity (20 CFR 404.1565).

7. [Plaintiff] was not under a disability, as defined in the Social Security Act, at any time from June 15, 2020, the alleged onset date, through December 31, 2022, the date last insured (20 CFR 404.1520(g)).

(Tr. 17-25).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 97 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails

4

to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

### D. Specific Errors[2]

Plaintiff contends that the ALJ erred at step two of the sequential evaluation by failing to find his PTSD and other mental health impairments severe and by subsequently failing to incorporate any mental health limitations into the residual functional capacity (RFC) determination. To support this position, plaintiff first highlights the Appeals Council's remand order. Plaintiff notes that the Appeals Council remanded in part due to the ALJ's failure in his 2022 decision to reconcile the opinions of the state agency psychological consultants, which the ALJ initially found persuasive (*see* Tr. 115), with his somewhat conflicting (i.e., less restrictive) RCF determination. (*See* Tr. 125-26). Plaintiff further notes that the ALJ in the 2022 decision found that plaintiff's depression, anxiety, and PTSD were severe impairments and that plaintiff's RFC included mental limitations. (Tr. 108, 111). The Commissioner does not appear to address this argument.

It is unnecessary to reconcile the ALJ's 2022 decision with his 2024 decision. The Appeals Council directed the ALJ on remand to "evaluate the medical source opinion(s) and prior administrative medical findings pursuant to the provisions of 20 CFR 404.1520c. As appropriate, the Administrative Law Judge may request the medical sources provide additional evidence and/or further clarification of the opinions (20 CFR 404.1520b)." (Tr. 126). In so doing, however, the Appeals Council "vacate[d] the [2022] hearing decision. . . ." (Tr. 125). Thus, the

---

[2] Plaintiff's statement of errors address only plaintiff's mental impairments; thus, any arguments regarding plaintiff's physical impairments are deemed waived. *See Watts v. Comm'r of Soc. Sec.*, No. 1:16-cv-319, 2017 WL 430733, at *11 (S.D. Ohio Jan. 31, 2017) (argument waived where plaintiff did not "develop it either legally or factually in the Statement of Errors") (report and recommendation), *adopted*, 2017 WL 680538 (S.D. Ohio Feb. 21, 2017).

ALJ had no obligation to reconcile his prior administrative findings regarding the state agency psychological consultants' opinions, severe impairments, or the RFC with his findings on remand. *See Berry v. Comm'r of Soc. Sec.*, No. 3:17-cv-140, 2018 WL 3077608, at *4 (S.D. Ohio June 21, 2018) ("Because ALJ Statum's decision never became final, as it was vacated pursuant to a remand for further proceedings, ALJ Statum's findings were not binding on ALJ Hockensmith. Thus, it is irrelevant that ALJ Hockensmith's RFC was different from that selected by ALJ Statum."); *Mason v. Berryhill*, No. 4:18-cv-00865, 2019 WL 2465316, at *22 (N.D. Ohio Mar. 6, 2019) (report and recommendation) (same), *adopted sub nom. Mason v. Comm'r of Soc. Sec.*, 2019 WL 3797930 (N.D. Ohio Aug. 13, 2019).

Plaintiff next argues that in his 2024 decision, the ALJ found that plaintiff had "no mental health impairment at all, and incorporated no mental health limitation into his RFC determination. . . ." (Doc. 8 at PAGEID 936). This is in part, plaintiff argues, because the ALJ improperly considered the medical opinion of medical expert Karl Umbrasas, Psy.D., on remand.[3] The Commissioner counters that the ALJ's analysis satisfied applicable regulations, plaintiff invites the Court to impermissibly reweigh the evidence, and substantial evidence supports the ALJ's conclusion even if substantial might also support a different conclusion.

Beginning with the ALJ's consideration of plaintiff's mental impairments, the Court first notes that the ALJ did, in fact, find that plaintiff had mental health impairments. (Tr. 17 (finding "medically determinable mental impairments of depression, anxiety, and [PTSD]")). The issue,

---

[3] Plaintiff also argues that Dr. Umbrasas' opinion is not "medical opinion" under applicable regulations. (Doc. 11 at PAGEID 956-57). Because this argument was raised for the first time in a reply brief, the Court does not address it. *See Fagin ex rel. B.P. v. Comm'r of Soc. Sec.*, No. 1:10-cv-813, 2012 WL 213801, at *11 n.1 (S.D. Ohio Jan. 24, 2012) (holding that a moving party may not raise new issues for the first time in its reply brief) (report and recommendation), *adopted sub nom. Fagin v. Comm'r of Soc. Sec.*, 2012 WL 481787 (S.D. Ohio Feb. 14, 2012)) (citations omitted).

however, is whether ALJ nevertheless erred by failing to consider the limiting effects of all those impairments—even if non-severe—when determining plaintiff's RFC.

An ALJ's failure to find a severe impairment where one exists may not constitute reversible error where the ALJ finds that the claimant "has at least one other severe impairment and continues with the remaining steps of the disability evaluation." *Winn v. Comm'r of Soc. Sec.*, 615 F. App'x 315, 326 (6th Cir. 2015) (citing *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)). "This rule is predicated on the notion that the ALJ 'properly could consider [the] claimant's [non-severe impairments] in determining whether [the] claimant retained sufficient residual functional capacity to allow [him] to perform substantial gainful activity." *Id.* (quoting *Maziarz*, 837 F.2d at 244). The Court must consider whether the ALJ "'consider[ed] limitations and restrictions imposed by all of [the claimant]'s impairments,' including his non-severe impairments[,]" in the remaining steps of the disability determination. *Fisk v. Astrue*, 253 F. App'x 580, 584 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *5). In other words, where the ALJ considers the "non-severe" impairments when determining the claimant's RFC, "'it is unnecessary to decide' whether the ALJ erred in classifying the impairments as non-severe at step two." *Id.* (citing *Maziarz*, 837 F.2d at 244).

The Sixth Circuit, however, has limited the holding in *Maziarz* in situations where an ALJ does "not consider . . . mental impairments in a meaningful way[,]" *Winn*, 615 F. App'x at 326, or "does not accurately state the evidence used to support his finding[,]" *White v. Comm'r of Soc. Sec.*, 312 F. App'x 779, 788 (6th Cir. 2009). Here, the ALJ discussed plaintiff's non-severe mental impairments and concluded that plaintiff had "no limitation" in any of the mental functioning areas. (*See* Tr. 18). But that discussion is cursory—with the ALJ referring to exhibits

7

generally[4] without highlighting particular records supporting his conclusion. In addition, the ALJ found "no limitation" in interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself despite the ALJ remarking (without specific record citation) that plaintiff exhibited at least some limitation. (*See id.* ("[T]here were occasions when [plaintiff's] eye contact was limited, and he was irritable with the office staff. . . . [T]here were instances when he presented as disheveled. . . .")). The Court finds that the ALJ's wholesale discount of any mental impairment is not supported by substantial evidence.

Even if the ALJ's cursory, somewhat inconsistent analysis of plaintiff's mental impairments was not error, however, the ALJ did err with respect to his assessment of Dr. Umbrasas' opinion. ALJs must adhere to agency regulations governing the evaluation of medical opinion evidence. Under the regulations applicable to plaintiff's claims, the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[5] including those from your medical sources." 20 C.F.R. § 404.1520c(a). Rather, the Commissioner will consider "how persuasive" the medical opinion is. 20 C.F.R. § 404.1520c.

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are

---

[4] The ALJ refers to Exhibits 1F, 2F, and 3F, which contain 186, 66, and 125 pages, respectively.
[5] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

Dr. Umbrasas submitted a "Medical Interrogatory – Mental Impairment(s) – Adult" form. (Tr. 884-88). Of relevance there, Dr. Umbrasas states in response to question seven that plaintiff has no impairments. (Tr. 884). Though prompted by the question to do so, Dr. Umbrasas cites no objective medical evidence supporting that opinion. In response to question eight, Dr. Umbrasas checks boxes indicating no limitations in any mental capacity, generically cites an exhibit containing 125 pages of VAMC Chillicothe records, and states "there is no evidence of cognitive or intellectual limitations and no evidence of limitations in interacting with others or managing himself." (Tr. 885). In response to question ten, Dr. Umbrasas states that plaintiff "can

9

understand, remember, apply information, make judgments, persist, interact with others, interact with society, and manage himself" without reference to specific evidence supporting that opinion, though prompted by the question to do so. (Tr. 888).

Dr. Umbrasas also submitted a "Medical Statement of Ability to Do Work-Related Activities (Mental)," on which he checked boxes indicating no impairment in plaintiff's ability to understand, remember, and carry out instructions; interact appropriately with supervisors, co-workers, and the public, as well as respond to changes in the routine work setting; or any other mental capabilities and indicating plaintiff's ability to manage in his own best interest. (Tr. 889-90). In these last several responses, Dr. Umbrasas does not elaborate or offer an explanation of any kind. (*Id.*).

The ALJ said the following regarding Dr. Umbrasas' opinion:

> The claimant's exhibit file was proffered to[] Kar[l] Umbrasas, Psy.D., a medical expert in September 2023, with a list of questions in order to obtain an independent assessment of the claimant's ability to function. This consultant opined there was no evidence of cognitive or intellectual limitations and no evidence of limitations interacting with others or managing himself during the time period of June 15, 2020, through December 31, 2022 (Exhibit 6F). The undersigned finds this opinion is persuasive in finding the claimant did not have a severe impairment during the period under consideration. This opinion is supported by the consultant's review of the claimant's exhibit file, which notes he did not have cognitive or intellectual limitations and he did not have trouble interacting with others and managing himself. In addition, this opinion is consistent with treatment notes that indicate he often had normal grooming, hygiene, memory, and understanding (Exhibits 1F-3F).

(Tr. 23).

As noted above, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Here, the ALJ merely states that his opinion is "supported by [Dr. Umbrasas'] review of the file" and references Dr. Umbrasas' statement that there was no evidence of cognitive or intellectual limitations or

10

limitations in interacting with others or managing oneself.  (Tr. 23, referring to Tr. 885).  But Dr. Umbrasas' statement itself is supported only by a generic reference to a 125-page exhibit.  (Tr. 885).  This falls short of an explanation that satisfies the articulation requirement for medical opinion evidence under the regulations.  *See Hritz v. Comm'r of Soc. Sec. Admin.*, No. 1:23-cv-00235, 2024 WL 83032, at *9 (N.D. Ohio Jan. 8, 2024) ("[The ALJ] must make the reasons for the supportability and consistency analysis sufficiently clear for subsequent review to determine whether substantial evidence supports the claimant's disability determination."); 20 C.F.R. § 404.1520c(b)(2) (the ALJ is required to "explain how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision).

The ALJ's consistency analysis is similarly lacking.  "The more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ."  20 C.F.R. § 404.1520c(c)(2).  Here, the ALJ states that Dr. Umbrasas' opinion "is consistent with treatment notes that indicate he often had normal grooming, hygiene, memory, and understanding (Exhibits 1F-3F)."  (Tr. 23).  Those exhibits represent nearly 400 pages of records.[6]  This does little to *explain* the consistency between Dr. Umbrasas' opinion and those records.  The Commissioner's attempt to do so *post-hoc* (*see* Doc. 10 at PAGEID 951, 953 (identifying particular records showing plaintiff's normal/appropriate dress, grooming, speech, thought process, memory, and concentration)) is to no avail.  *See Miller v. Berryhill*, No. 3:16-cv-94, 2017 WL 1021313, at *8 (S.D. Ohio Mar. 16, 2017) (explaining that the Court generally should not accept post-hoc rationalizations for agency action unless any associated error is harmless).

---

[6] Consideration of the balance of the ALJ's decision does not change the analysis, as the ALJ offers the same generic reference to "Exhibits 1F-3F" in his discussion of the areas of mental functioning.  (*See* Tr. 18).

11

The ALJ failed to evaluate Dr. Umbrasas' opinion in accordance with agency regulations. As such, the ALJ's decision is not based on substantial evidence.

## III. Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 8) is **SUSTAINED**, and the Commissioner's non-disability finding is **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS** consistent with this Order.  The Court **DIRECTS** the Clerk to enter judgment and to **TERMINATE** this case on its docket.

Date: 6/25/2025

Karen L. Litkovitz
United States Magistrate Judge